UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK LYNN WADE,<br><br>        Plaintiff,<br><br>    v.<br><br>B. GATES, et al.,<br><br>        Defendants. | No. 1:22-cv-00123-KES-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF Nos. 25, 27) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action.

**I.**

**BACKGROUND**

On June 13, 2025, Plaintiff's complaint was screened. (ECF No. 21.) The screening order found that the complaint only stated claims against Defendants Nege and Montegrande for Eighth Amendment deliberate indifference. Id. at 21. As a result, Plaintiff was given the options of moving forward with the complaint as screened; of filing an amended complaint; of filing a notice of his intent to stand on the complaint, or of voluntarily dismissing this matter in its entirety. Id. at 21-22. Plaintiff was given thirty days to take one of these four courses of action. Id. at 21.

Instead of taking one of these courses of action, on July 17, 2025, Plaintiff filed a "motion to reconsider screening." (ECF No. 22.) In it, Plaintiff identified various Defendants named in

the original complaint, and he appeared to attempt to state why the claims alleged against them are viable. (ECF No. 22 at 3-7.)

On the same day, Plaintiff filed a "request for extension of time to respond to reconsideration motion to amend" was docketed. (ECF No. 23.) Therein, Plaintiff appeared be requesting an extension of time to file an amended complaint. Id. at 1.

On August 11, 2025, the Court granted Plaintiff's motion for leave to amend the complaint, and granted Plaintiff thirty days to file an amended complaint. (ECF No. 25.)

On September 12, 2025, Plaintiff filed a notice of instant to stand on the original complaint, filed on January 31, 2022. (ECF No. 27.) Thus, the operative complaint is the original complaint, which for the reasons explained below, states only a cognizable claims against Drs. Montegrande and Nege for deliberate indifference to a serious medical need under the Eighth Amendment for failing to address Plaintiff's pain, suffering, mental anguish and need for medical assistive devices to address his mobility issues.

## II.

## SCREENING REQUIREMENT

Courts are required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as

true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.
## COMPLAINT ALLEGATIONS

The events at issue occurred at Plaintiff's first institution, CCI Tehachapi. Plaintiff alleges he was wrongfully denied cervical spine surgery, mobility equipment, pain medication, and an orthopedic pillow.

Plaintiff names six Defendants: 1- Warden B. Cates of California Correctional Institution in Tehachapi, CA ("CCI Tehachapi"); 2- S. Gates, Chief Healthcare Correspondent and Appeals of California Correctional Healthcare Services (CCHCS) in Elk Grove, CA; 3- Dr. U. Baniga, Chief physician1 and surgeon at CCI Tehachapi; 4- Dr. Faye Montegrande, former Physician and Surgeon2 at CCI Tehachapi; 5- Dr. Nege, current physician and surgeon at CCI Tehachapi; 6- Unknown (Doe) Smart Committee3, a CDCR contractor for CCI Tehachapi.

At CCI Tehachapi on March 10, 2017 Plaintiff sought treatment for systemic numbness. Compl. ¶ 2. Defendants didn't provide timely care. Compl. ¶ 3. Plaintiff's cervical impairment limits daily activities. Compl. ¶ 4. This causes mental and physical anguish. Compl. ¶ 5. Imaging showed severe abnormalities. Compl. ¶ 8. Plaintiff constantly asked for care. Compl. ¶ 11. On May 10, 2017, he complained he was hot and dizzy. Compl. ¶ 12.

Since May 10, 2017 Plaintiff submitted forms noting extremity tingling. Compl. ¶ 13. Dr. Montegrande didn't order an MRI until August 29,2018; symptoms were already worse. Compl. ¶ 14. He has emotional distress. Compl. ¶ 15. The Smart Review Team (SRT)[1] denied surgery. Compl. ¶ 16-17. An August 29, 2018 MRI noted severe disc degeneration. Compl. ¶ 20. On October 2, 2018, and February 26, 2020 Drs. Eckermann and Abumeri recommend fusion which

---
[1] Variously referred to as the CDCR (John Doe) Smart Review Team, or Smart Review Committee.

3

1   SRT denied. Compl. ¶ 21–24. He was harmed at CCI Tehachapi; On August 26, 2021 he was
2   transferred to Chuckawalla Valley State Prison. Compl. ¶ 27.
3         Since May 2017 he has numbness, mild paralysis, severe pain, and mobility issues.
4   Compl. ¶ 28. The SRT are employed and/or contracted possibly by CDCR. Compl. ¶ 36. Dr.
5   Montegrande didn't provide medical equipment and pain medication. Compl. ¶ 38-39. Dr. Nege
6   became active Physician on facility C yard on or about Aug 1, 2019 through Jan 30, 2022 and
7   denied a cane and an orthopedic pillow. Compl. ¶ 41. On July 28, 2021, Dr. Nege issued a cane,
8   mobility vest, Tramadol, and deemed Plaintiff DLT disabled. Compl. ¶ 42.
9         As Chief Medical Officer, CMO Baniga is responsible. Compl. ¶ 43. S. Gates denied
10  Plaintiff's appeal and is also responsible. Compl. ¶ 45–49. Defendants should have followed the
11  recommendation of Drs. Eckermann and Dr. Abumeri. Compl. ¶ 57. Plaintiff now has mild
12  paralysis and uncontrollable twitching in right hand and fingers. Compl. ¶ 59.
13        Dr. Nege took over for Dr, Montegrande on or about August 1, 2019. Compl. ¶ 63–64.
14  Dr. Nege issued Plaintiff a cane, mobility vest, pain medication, and deemed him disabled on July
15  28, 202. Compl. ¶ 64-66. This equipment was required by the ADA. Compl. ¶ 67.
16  Plaintiff seeks a declaratory judgment that the Defendants violated his rights, an
17  injunction against any medical procedures without updated imaging and consulting with outside
18  neurosurgeons, compensatory damages, and punitive damages. Compl. ¶ 78–83.
19  Plaintiff's alleged injury includes neurological symptoms affecting motor skills, ability to
20  walk, severe pain, and extremity numbness.

## IV.
## DISCUSSION

### A.  Official Capacity

Plaintiff states he is suing all the Defendants in both their individual and official capacities. Compl. at 3.

Although "state officials literally are persons," an official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Hafer v. Melo, 502 U.S. 21, 26 (1991) (quoting

4

1    Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45

2    (1989)). To the extent Plaintiff seeks to hold any of the Defendants liable in their Official

3    capacities, including members of the Smart Committee, the Eleventh Amendment bars suits for

4    money damages in federal court against state officials in their official capacity. Aholelei v. Dep't

5    of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

6    However, it does not bar official capacity suit for prospective injunctive relief, Wolfson v.

7    Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state

8    officials in their personal capacities. Hafer v. Melo, 502 U.S. at 30 (1991); Porter v. Jones, 319

9    F.3d 483, 491 (9th Cir. 2003).

10   Here, because Plaintiff was transferred to another prison---Chuckawalla State Prison---he

11   is very likely foreclosed from suing for prospective injunctive relief. Plaintiff has requested both

12   preliminary and temporary injunctions (Compl. ¶ 79). On August 26, 2021, Plaintiff states he was

13   transferred to another prison (Compl. ¶ 27). "Federal Courts are limited to live cases and

14   controversies." Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010) (citing Flast v. Cohen, 392

15   U.S. 83, 96, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968)); see also Deakins v. Monaghan, 484 U.S.

16   193, 199, 108 S. Ct. 523, 98 L. Ed. 2d 529 (1988) ("Article III of the Constitution limits federal

17   courts to the adjudication of actual, ongoing controversies between litigants.")  "Prisoners who

18   have been released from prison or transferred to a different prison may not sue for injunctive

19   relief because they no longer benefit from having the injunction issued." Rupe v. Cate, 688 F.

20   Supp. 2d 1035, 1043 (E.D. Cal. Feb. 1, 2010) (citing Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.

21   1995)) (other citations omitted). A prisoner's claim for injunctive relief is moot if there is no

22   reasonable expectation the prisoner will be transferred back to the prison where the harm

23   occurred. Dilley, 64 F.3d at 1369.

24   Plaintiff demonstrates no such reasonable expectation, thus his request for prospective

25   injunctive relief is moot insofar as he seeks to compel the current Defendants to render the

26   cervical fusion surgery or take other corrective action. Compl. ¶ 10. As well, the request for

27   injunctive relief is also moot insofar as it seeks to prohibit Defendants in their official capacity

28   from rendering surgical procedures without first consulting with outside neurosurgeons upon CT

Scans and MRI images. Compl ¶ 79.[2]

### B.    Eighth Amendment-Medical Care

In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his "serious medical needs." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Id. (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.''' Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). Second, a plaintiff must allege that the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." Id. (quoting Wilson, 501 U.S. at 302-03). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

///

---

[2] Additionally, Plaintiff sought a third form of injunctive relief against officials at his new facility, who are not named Defendants. After filing of the complaint, on October 13, 2022, Plaintiff asked the Court for an injunction against any surgical procedures at the institution to which he was transferred- Chuckawalla State Prison. ECF No. 10. Plaintiff sought to enjoin any such procedures until an updated MRI was obtained and until Plaintiff had the opportunity to consult with a physician "to determine the right prognosis." Id. The Court denied the injunction due to lack of jurisdiction over non-defendant Chuckawalla officials. ECF No. 13, 14.

Deliberate indifference to a prisoner' serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060. Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

///

      1.      <u>Individual Capacity, Personal Participation</u>

      **a.**      **The Smart Committee, Group Liability**

To the extent Plaintiff is seeking to sue individual Smart committee members in their individual capacity, who are currently identified only as DOE, he has not stated a claim. (Compl. ¶¶ 16, 17,18, 19, 24, 25, 36). A Plaintiff may not simply name groups of people when asserting individual capacity claims. He must set forth what each individual DOE did or did not do as merely grouping them together is not sufficient. For example, he must state what DOE 1 did individually, what DOE 2 did individually, identifying them in some way and distinguishing their actions.

Moreover, under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights. <u>See</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. <u>See</u> <u>Ortez v. Washington Cty, State of Oregon</u>, 88 F.3d 804, 809 (9th Cir. 1996); <u>see also</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

To the extent Plaintiff is seeking to recover monetary damages against the Smart committee itself, when seeking monetary damages against the State of California or its agencies, or any of the defendants in their official capacity, such claims are barred by the Eleventh Amendment. U.S. Const., Amend. XI; <u>Alabama v. Pugh</u>, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); <u>Kentucky v. Graham</u>, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). As noted above however, the Eleventh Amendment does not bar suits against state officials in their individual capacities, or for declaratory or injunctive relief in their official capacities. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n. 54, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

      **b.**      **S. Gates**

Here, Plaintiff has not demonstrated the requisite linkage to demonstrate an Eighth amendment medical violation by Defendant S. Gates, Chief Healthcare Correspondent and

8

Appeals of California Correctional Healthcare Services (CCHCS) in Elk Grove, CA. Nor can Gates be liable under a theory of respondeat superior.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. Id.

Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them. See Taylor, 880 F.2d at 1045; Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Plaintiff alleges no participation by S. Gates in the denial of surgery or failure to provide pain remedies or mobility equipment. Plaintiff fails to allege any action or inaction by S. Gates other than denial of his institutional appeal (Compl. ¶ 49), which is not actionable under the Eighth Amendment under the facts here. Absent an alleged defect in the process pursuant to which the institutional proceedings were conducted, caselaw indicates that prisoners have no constitutional interest with respect to institutional grievance proceedings or outcomes. See Muhammad v. Rubia, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010).

      **c.**     **Warden B. Cates**

Warden B. Cates' is identified as a defendant in the case caption and list of defendants.

1  Compl. at 1–2. Warden Cates' name is never mentioned again in the complaint. To the extent
2  Plaintiff is attempting to hold Warden Cates liable solely based on his supervisory role as
3  Warden, he may not do so. Liability cannot be imposed on supervisory personnel for the actions
4  or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676-
5  77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010).

6  Again, as stated above, supervisory personnel are generally not liable under § 1983 for the
7  actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that
8  there is no respondeat superior liability under § 1983). A supervisor is only liable for the
9  constitutional violations of subordinates if the supervisor participated in or directed the violations.
10 See id. Supervisory personnel who implement a policy so deficient that the policy itself is a
11 repudiation of constitutional rights and the moving force behind a constitutional violation may be
12 liable even where such personnel do not overtly participate in the offensive act. See Redman v.
13 Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory defendant may
14 also be liable where he or she knew of constitutional violations but failed to act to prevent them.
15 See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

16 When a defendant holds a supervisory position, the causal link between such defendant
17 and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607
18 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and
19 conclusory allegations concerning the involvement of supervisory personnel in civil rights
20 violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).
21 "[A] plaintiff must plead that each Government-official defendant, through the official's own
22 individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

23 Having failed to establish a causal link, Plaintiff fails to state a claim against Warden
24 Cates.

25 **d.    U. Baniga, CMO**

26 The lone allegation against CMO Baniga is that, "as the (CMO)," he should have known
27 and been aware of "common" symptoms and taken every necessary step so as not to violate
28 Plaintiff's 8th amendment rights. Compl. ¶ 43, 75. However, Plaintiff simply speculates about

1  CMO Baniga's involvement solely based on his job title. Plaintiff does not set forth any facts
2  demonstrating CMO Baniga's involvement in the decision to deny Plaintiff's surgery or care,
3  including the alleged denial of mobility equipment and pain medication. Thus, Plaintiff fails state
4  a claim against Dr Baniga.

### e. Dr. Montegrande

Plaintiff states that he began experiencing symptoms on the evening of 5/10/2017 and requested immediate treatment. Compl. ¶ 2. Dr. Montegrande ordered an X-Ray on 11/9/2017. Compl. ¶ 13. Several months passed before Dr. Montegrande requested an MRI on 8/29/18. Compl. ¶ 13. Between those times, Plaintiff states he diligently notified CCI medical staff of his on-going symptoms. Compl. ¶ 13. On 8/29/18 Plaintiff was sent for an MRI as a result of the X-Ray Dr. Montegrande had ordered. Compl. ¶ 20. On 10/2/2018 Plaintiff saw Dr. Eckermann, a neurosurgeon, who recommended fusion of his c-spine. Compl. ¶ 21. On 2/3/20 Plaintiff was referred by Dr. Montegrande for another MRI. Compl. ¶ 22. On 2/26/20 he was seen by Dr. Abumeri, another neurosurgeon, who made the same recommendation as Dr. Eckermann. Compl. ¶ 23.

Importantly, these recommendations for surgery were sent to the Smart Committee for approval and denied by that committee. Compl. ¶ 24. However, Plaintiff does not allege that he was denied surgery by Dr. Montegrande. The only alleged conduct of Dr. Montegrande potentially giving rise to an Eighth Amendment violation is allegedly delaying treatment for Plaintiff's pain and failing to provide him with assistive devices. Specifically, Plaintiff claims that Dr. Montegrande failed to provide him with the necessary medical equipment and medication to relieve his pain and mobility issues he was experiencing. Compl. ¶ P38, 40. Plaintiff states that from May of 2017 his condition has caused him "severe pain and mobility issues." Compl. ¶ 28, 29, 38, 60, 71.

Plaintiff claims that Dr. Montegrande was aware of Plaintiff's condition throughout her rotation on facility C yard at CCI yet failed to issue mobility equipment (Compl. ¶ 67) and medication to relieve Plaintiff's pain (Compl. ¶ 72). As discussed below, this alleged conduct, liberally construed and assumed true at the pleading stage, satisfies both the objective and

11

subjective prongs of the test for deliberate indifference to a serious medical need under the Eighth Amendment.

As to the objective prong, Plaintiff was diagnosed with a severe degenerative disc disorder depicted on an August 29, 2018 MRI (Compl. ¶ 20), This ostensibly is a sufficiently serious condition which, if disregarded, could result in further significant injury and/or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059 (9th Cir. 1992). Further, the factors set forth in Lopez support this finding because: 1- a reasonable doctor would consider the condition worthy of comment, 2- the condition significantly impacted Plaintiff's daily activities, and 3- the condition was chronic and accompanied by substantial pain. Lopez, 203 F.3d at 1131–32.

As to the subjective prong, the allegations establish that Dr. Montegrande's inaction 6 demonstrates a culpable state of mind given that Dr. Montegrande consciously disregarded the known risk of further injury and severe pain. This finding is supported given that Dr. Montegrande was aware of Plaintiff's ongoing symptoms of numbness, mobility limitations, severe pain, from his initial report on 5/10/2017 through the date she was possibly no longer responsible for his treatment when Dr. Nege became the active physician at CCI Tehachapi on or about 8/1/19. Dr. Montegrande was also aware that these symptoms were supported by the findings on X-Ray and MRI, yet she allegedly did not provide mobility equipment, pain medication, or other medical intervention. Thus, Plaintiff states a plausible claim for deliberate indifference under the Eighth Amendment against Dr. Montegrande.

      **f.**     **Dr. Nege**

Dr. Nege became the active physician on CCI Tehachapi C yard on or about 8/1/19. Compl, pg 13 . Plaintiff claims that Dr. Nege was deliberately indifferent in denying Plaintiff's request for a cane and an orthopedic pillow to relieve Plaintiff's suffering. Compl. ¶ 41. Plaintiff states that on 7/28/21, after many requests by Plaintiff, Dr. Nege finally deemed him "DLT" disabled and issued him an ADA mobility vest, tramadol, and a cane. Compl. ¶ 42, 74.

These allegations satisfy the objective and subjective prongs for deliberate indifference for reasons similar to those noted above with respect to Dr. Montegrande. The condition depicted in

12

both the initial 8/29/2018 MRI and subsequent 2/3/2020 MRI, are objectively serious for the same reasons noted above. Subjectively, Dr. Nege's inaction could be said to demonstrate a culpable state of mind and a conscious disregard of a known risk. This finding is supported on the allegation that after Dr. Nege became the active Physician on facility C yard on or about 8/1/19, it wasn't until 7/28/21, after many requests from Plaintiff, that Dr. Nege finally provided mobility equipment and pain medication to Plaintiff.

Thus, Plaintiff states a plausible claim for deliberate indifference under the Eighth against Dr. Nege.

**D.  ADA Violations**

Although not specifically stated as a claim in Plaintiff's complaint, Plaintiff does refer to ADA violations (Compl. ¶ 67, 72).

1.  Applicable Law

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Neither the ADA nor the Rehabilitation Act provides a basis to sue state officials in their individual capacity. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (a plaintiff cannot sue state officials in their individual capacity under § 1983 to vindicate rights created by Title II of the ADA or Section 504 of the Rehabilitation Act). Instead, the proper defendant in an

ADA action is the public entity responsible for the alleged discrimination. See United States v. Georgia, 546 U.S. 151, 154, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). In order to recover monetary damages, the plaintiff must allege intentional discrimination under the "deliberate indifference" standard. Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (as amended). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon . . . the likelihood." Id. at 1139. This standard is not met "where a duty to act may simply have been overlooked," but rather "a failure to act must be a result of conduct that is more than negligent[.]" Id.

2. Analysis

Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")). Moreover, the ADA prohibits discrimination because of disability, not inadequate treatment for disability. See Bryant, 84 F.3d at 249.

Here, Plaintiff does not allege that he was denied adequate medical care because of his disability, rather he alleges that he was denied adequate medical care to treat his mobility and pain issues caused by his alleged severe degenerative disc disorder. Again, inadequate treatment alone does not support an ADA claim. See Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), overruled in part on other grounds, Castro, 833 F.3d 1060; Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[The ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice.").

Thus, Plaintiff fails to state a claim for a violation of the ADA.

**E.   Negligence**

Plaintiff may also be asserting that the conduct giving rise to his deliberate indifference claim gives rise to a distinct claim for negligence and/or medical malpractice. Compl. ¶ 58. Or he

14

may be asserting that the conduct was deliberately indifferent under the Eighth Amendment because it was negligent or constituted medical malpractice.[3] Compl. ¶ 58. Importantly, Plaintiff has not shown that he has met the requirements to pursue a negligence or medical malpractice claim. To pursue state law claims Plaintiff must have first presented his claim to the state. Here, Plaintiff has failed to demonstrate compliance with the Government Claims Act, which he is required to do. See State of California v. Superior Court, 32 Cal. 4th 1234, 1240, 1237, 13 Cal. Rptr. 3d 534, 90 P.3d 116 (2004) (for claims against the State, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint); see also Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller").

### F. Equal protection

Although not specifically alleged as a claim, Plaintiff mentions equal protection. Compl. ¶ 40.

The Equal Protection Clause of the Fourteenth Amendment broadly requires the government to treat similarly situated people equally. Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). To state an equal protection claim, a plaintiff must typically "'allege' defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" such as a particular race or religion. Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original). Here, Plaintiff does not set forth sufficient facts to support an equal protection claims.

---

[3] This theory is directly refuted by prevailing law. "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

15

**V.**

**ORDER AND RECOMMENDATIONS**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. This action proceed against Defendants Dr. Nege and Dr. Montegrande for deliberate indifference under the Eighth Amendment; and

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 23, 2025**

STANLEY A. BOONE
United States Magistrate Judge