UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK LYNN WADE,<br>Plaintiff,<br>v.<br>B. GATES, et al.,<br>Defendants. | No. 1:22-cv-00123-SAB (PC)<br>ORDER GRANTING DEFENDANT NEGE'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br>(ECF No. 57)<br>(ECF No. 57) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Both parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (ECF No. 56.)

Currently before the Court is Defendant Nege's motion for summary judgment for failure to exhaust the administrative remedies, filed July 22, 2026.

## I.

## BACKGROUND

This action is proceeding against Defendants Dr. Nege and Dr. Montegrande for deliberate indifference under the Eighth Amendment.

Defendant Dr. Nege filed an answer to the complaint on April 20, 2026. (ECF No. 42.)

The discovery and scheduling order was issued on May 20, 2025. (ECF No. 47.)

Defendant Dr. Montegrande filed an answer to the complaint on June 17, 2026. (ECF No. 51.)

On July 22, 2026, Defendant Dr. Nege filed the instant motion for summary judgment for failure to exhaust the administrative remedies.[1] (ECF No. 57.)

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

[1] As required by Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998), Plaintiff was provided with notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies via an attachment to the Defendant's motion for summary judgment. (ECF No. 57-1.)

are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

**B. Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A. Description of CDCR's Administrative Remedy Process**

Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health care issues have been processed by California Correctional Health Care Services (CCHCS), under the Office of the Federal Receiver appointed in the class action litigation regarding prison health care, Plata v. Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351. (UF No. 3.)

The California Code of Regulations (CCR), Title 15, §§ 3999.225 – 3999.237 governs the health care grievance process. Under these regulations, incarcerated persons may grieve issues regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form. Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a) (2019). The California Code of Regulations (CCR), Title 15, §§ 3999.225 – 3999.237 requires that in a submitted CDCR 602 HC, Health Care Grievance form, the grievant, "shall document clearly and coherently all information known and available to him or her regarding the issue. Cal. Code Regs. tit. 15, §§ 3999.227(g) (2019). The grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. Id. If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." Id. Health care grievances are subject to two levels of review: health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution, and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person. Cal. Code Regs. tit. 15, § 3999.226(a)(1) (2019). Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhaust ed. Cal. Code Regs. tit. 15, § 3999.226(g) (2019). All health care grievances are tracked

and maintained in an electronic database known as the Health Care Appeals and Risk Tracking System (HCARTS). (UF No. 7.)

**B. Complaint Allegations**

Since May 2017 Plaintiff has suffered from numbness, mild paralysis, severe pain, and mobility issues. (ECF No. 1 at 8.) Dr. Montegrande failed to provide medical equipment and pain medication. (ECF No. 1 at 9.)

Plaintiff alleges that Defendant Nege, who became the active physician on Facility C Yard at CCI on or around August 1, 2019, was deliberately indifferent by denying Plaintiff's requests for a cane and orthopedic pillow to relieve his pain and suffering. (ECF No. 1 at 10, 13.) Plaintiff alleges that on July 28, 2021, after many requests from Plaintiff, Defendant Nege finally issued Plaintiff a cane and deemed him DLT disabled, issued Plaintiff an ADA mobility vest, and Tramadol prescription medication for pain. (Id.) Plaintiff was transferred out of CCI on August 26, 2021. (Id. at 13.)

**C. Statement of Undisputed Facts[2]**

1. Plaintiff Roderick Lynn Wade (#BA0791) is an incarcerated individual in the custody of the California Department of Corrections and Rehabilitation (CDCR). (ECF No. 1 at 1.)

2. At all times relevant to the allegations in this case, Plaintiff was housed at the California Correctional Institution (CCI) in Tehachapi, California. (Id. at 1.)

3. Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health care issues have been processed by the California Correctional Health Care Services (CCHCS), under the Office of the Federal Receiver appointed in the class action litigation regarding prison health care, Plata v. Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351. (Martin Decl. ¶ 1.)

4. The California Code of Regulations (CCR), Title 15, §§ 3999.225 – 3999.237 governs the health care grievance process. Under these regulations, incarcerated persons may grieve issues regarding health care policies, decisions, actions, conditions, or omissions using a

[2] Hereinafter referred to as "UF."

CDCR 602 HC, Health Care Grievance form. Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a) (2019); (Martin Decl. ¶ 3.)

5. The California Code of Regulations (CCR), Title 15, §§ 3999.225 – 3999.237 requires that in a submitted CDCR 602 HC, Health Care Grievance form, the grievant, "shall document clearly and coherently all information known and available to him or her regarding the issue. The grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." Cal. Code Regs. tit. 15, §§ 3999.227(g) (2019).

6. Health care grievances are subject to two levels of review: health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person. Cal. Code Regs. tit. 15, § 3999.226(a)(1). Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15, § 3999.226(g); (Martin Decl. ¶ 3.)

7. Health care grievances are tracked and maintained in an electronic database known as the Health Care Appeals and Risk Tracking System (HCARTS). (Martin Decl. ¶ 4.)

8. Plaintiff was aware of how to use the administrative remedies system at his institution and made use of it. (Martin Decl. ¶ 5, Ex. A.)

9. Plaintiff filed two healthcare grievances related to the allegations in his lawsuit: Grievance Log No. CCI HC 19000821 and CVSP HC 21000287 (Martin Decl. ¶ 6.)

10. In Grievance Log No. CCI HC 19000821, Plaintiff alleged that there was a conflict of interest with Dr. Montegrande, that Dr. Montegrande had failed to properly diagnose and treat his leg rashes and order him an X-ray on his neck, and that Plaintiff needed a cane and orthopedic pillow to ease severe pain in his back and neck. (Martin Decl. ¶ 7, Ex. B.)

11. Grievance Log No. CCI HC 19000821 was received at the institutional level on November 12, 2019. The institutional level response was completed on January 21, 2020 with

a disposition of Intervention. (Martin Decl. ¶ 7, Ex. B.)

12. Plaintiff submitted Grievance Log No. CCI HC 19000821 for headquarters' level review on February 21, 2020. The headquarters' level response was completed on April 14, 2020 with a disposition of No Intervention (Martin Decl. ¶ 7, Ex. B.)

13. In Grievance Log No. CVSP HC 21000287, Plaintiff alleged that he was being denied ADA access to mobility equipment, including a medical chair and medical pillow to relieve pain and suffering in his neck and back. (Martin Decl. ¶ 8, Ex. C.)

14. Grievance Log No. CVSP HC 21000287 was received at the institutional level on December 21, 2021. The institutional level response was completed on December 21, 2021 with a disposition of rejected. (Martin Decl. ¶ 8, Ex. C.)

15. There is no record that Grievance Log No. CVSP HC 21000287 was received for headquarters' level review. (Martin Decl. ¶ 8, Ex. C.)

16. Plaintiff did not file any other grievances related to his claim that Defendant Nege was deliberately indifferent by denying Plaintiff's requests for a cane and orthopedic pillow to relieve his pain and suffering until their appointment on July 28, 2021. (Martin Decl. ¶ 6.)

**D. Analysis of Defendant's Motion**

Defendant argues that Plaintiff did not name Nege in the two relevant healthcare grievances that he submitted prior to the filing of the operative complaint, or describe how Nege's alleged wrongful conduct in the grievances.

Plaintiff has failed to file an opposition and the time to do so has passed. Local Rule 230(l). However, on the form complaint, Plaintiff checks the box "yes" to having submitted a grievance for his claim that was exhausted to the highest of level. (ECF No. 1 at 4, 13.)

Here, it is undisputed that Plaintiff filed two healthcare grievances related to the allegations in his lawsuit: Grievance Log No. CCI HC 19000821 and CVSP HC 21000287 (UF 9.)

In Grievance Log No. CCI HC 19000821, Plaintiff alleged that there was a conflict of interest with Dr. Montegrande, that Dr. Montegrande had failed to properly diagnose and treat his leg rashes and order him an X-ray on his neck, and that Plaintiff needed a cane and

orthopedic pillow to ease severe pain in his back and neck. (UF 10.) This grievance was received at the institutional level on November 12, 2019. The institutional level response was completed on January 21, 2020 with a disposition of Intervention. (UF 11.) He submitted this grievance for headquarters' level review on February 21, 2020. The headquarters' level response was completed on April 14, 2020 with a disposition of No Intervention (UF 12.)

In Grievance Log No. CVSP HC 21000287, Plaintiff alleged that he was being denied ADA access to mobility equipment, including a medical chair and medical pillow to relieve pain and suffering in his neck and back. (UF 13.) This was received at the institutional level on December 21, 2021. The institutional level response was completed on December 21, 2021 with a disposition of rejected. (UF 14.) There is no record that Grievance Log No. CVSP HC 21000287 was received for headquarters' level review. (UF 15.)

Neither grievance includes Plaintiff's claims of misconduct by Defendant Nege. Indeed, Plaintiff failed to name Defendant Nege in either grievance or include the allegations that Nege ignored his requests for a cane and orthopedic pillow. (UF 10, 13.) It is further undisputed Plaintiff did not file any other grievances related to his claim that Defendant Nege was deliberately indifferent by denying Plaintiff's requests for a cane and orthopedic pillow to relieve his pain and suffering until their appointment on July 28, 2021. (UF 16.) Plaintiff's failure to name Defendant Nege, or include any information which could be used to identify Defendant Nege as having failed to provide him with a cane or orthopedic pillow, does not suffice to put the prison on notice of the nature of the wrong alleged in Plaintiff's complaint. Plaintiff's institution was not provided with an opportunity to take any necessary appropriate responsive measures against Defendant Nege because Plaintiff's grievances failed to put his institution on notice that he was grieving conduct by Defendant Nege.

Thus, Defendant has met his initial burden in demonstrating that Plaintiff failed to exhaust the administrative remedies. The burden now shifts to Plaintiff to present evidence showing "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1166.

///

Plaintiff has failed to oppose Defendant's motion, despite being properly served and provided with the applicable Rand notice. Consequently, Plaintiff has failed to show that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him or that he was incapable of filing a timely appeal. Albino, 747 F.3d at 1172. Accordingly, Defendant Nege is entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies. Id. at 1166.

**IV.**

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendant Nege's motion for summary judgment for failure to exhaust the administrative remedies (ECF No. 57) is granted; and
2. Defendant Nege is dismissed from the action, without prejudice, for failure to exhaust the administrative remedies.

IT IS SO ORDERED.

Dated: **September 3, 2026**

STANLEY A. BOONE
United States Magistrate Judge